IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 17, 2015 Session


## CECIL MCNATT, ET AL. v. JANE VESTAL (KANIZAR); HENDERSON VILLA INC. v. CECIL MCNATT, ET AL.

Appeal from the Chancery Court for Chester County
No. 2010CV477    James F. Butler, Chancellor

————————————————————

### No. W2015-00870-COA-R3-CV – Filed February 18, 2016
————————————————————

This is a construction case.  Appellee, Cecil McNatt, contracted to build and obtain the required licensing for an assisted living facility for Appellant Jane Vestal.  The facility was constructed and licensed according to the parties' contract.  Following completion, Appellant refused to pay the balance of the contract amount, citing the Appellee's lack of a contractor's license and numerous construction defects.  Appellee filed suit against Appellant for breach of contract, and Appellant counterclaimed for violations of the Contractors Licensing Act and Tennessee Consumer Protection Act.  The trial court concluded that Appellee did not violate the Contractors Licensing Act or the Tennessee Consumer Protection Act, dismissed Appellants' counterclaims, and awarded Appellees a judgment in the amount of $96,280.11.  We conclude that trial court erred in concluding that the Appellee did not violate the Contractors Licensing Act, but we affirm the judgment to Appellee, with some modification of the amount awarded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed in Part, Reversed in Part, and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Clinton H. Scott, Jackson, Tennessee and J. Brandon McWherter, Franklin, Tennessee, for the appellants, Jane Vestal (Kanizar) and Henderson Villa, Inc..

Charles H. Barnett, III and Sara E. Barnett, Jackson, Tennessee, for the appellees, Cecil

McNatt and Marcia McNatt.


**OPINION**

**I. Background**

On May 8, 2009, Jane Vestal ("Vestal") and Cecil McNatt ("McNatt") executed a contract under which Vestal agreed to pay $1,400,000 in exchange for McNatt "render[ing] all services and duties required for the construction of and all licensing of the ASSISTED LIVING FACILITY to be located in Henderson, Tennessee and owned by [Vestal]." The contract listed McNatt's duties as: (1) "Building permit;" (2) "planning and zoning review with the city;" (3) "review of plans by state health board;" (4) "application with state health board;" (5) "review of plans by state fire marshall's office;" (6) "compliance with the 101 Life Safety code;" (7) "employing an architect to sign off on the plans;" (8) "acquiring all engineering approvals;" (9) "building the facility according to plans and specs;" (10) "all appliances in kitchen;" (11) "obtaining permit to occupy from state;" (12) "obtaining permit to occupy from city;" and (13) "obtaining license to operate ASSISTED LIVING CENTER." The contract described McNatt's work as a "turn key job," and the contract specified that payment was due "when the contract is fully performed by [McNatt], and [a] permit to occupy has been issued." It is undisputed that, at the time the parties executed the contract, McNatt was not a licensed contractor.

On May 11, 2009, three days after executing the contract with Vestal, McNatt executed a "Joint Venture Agreement" with M.S. Burton Construction Co. Inc. ("Burton Construction"). This agreement stated that the "joint venture shall be formed for the purpose of constructing and developing two assisted living facilities in Tennessee…." The agreement also stated that "[t]he joint venture shall be considered in all respects a joint venture between the parties, and nothing in this agreement shall be construed to create a partnership or other fiduciary relationship between the parties." It is undisputed that Burton Construction held an unlimited contractor's license at the time it executed this agreement with McNatt. However, the contract between McNatt and Vestal included no reference to this joint venture agreement or to Burton Construction. McNatt's contract with Vestal provides that McNatt will build the assisted living facility for Vestal.

On September 15, 2009, McNatt obtained a building permit in Burton Construction's name for construction of the facility. McNatt maintains that Vestal was aware from the outset that Burton Construction would be acting as the general contractor on the project. Burton Construction's name was on the building permit, which was posted in the

2

construction office onsite, and Vestal admitted seeing the permit early on during construction. Vestal also used Burton Construction's license number to obtain construction insurance for the building being constructed. Vestal and Michael Burton ("Burton"), the owner of Burton Construction, also attended the same church, and Vestal knew Burton was a general contractor. Although Burton was listed as the general contractor on the project, it is undisputed that McNatt selected most of the subcontractors, supervised all of the subcontractors, and paid all of the subcontractors used on the project. McNatt was onsite throughout the construction of the facility, and Burton only visited the construction site to perform inspections and otherwise left the day-to-day supervision to McNatt. Construction of the facility was completed in August of 2010, and Vestal executed the Notice of Completion on September 1, 2010. The Notice of Completion identified Burton Construction as the general contractor of the facility. The parties closed on the facility on November 10, 2010, and Vestal began operating the facility under the name Henderson Villa.

Following completion of the facility, Vestal refused to pay the balance owed on the contract and amounts owed for other services. Consequently, on December 7, 2010, McNatt and his wife Marcia (together, "the McNatts" or "Appellees") filed a complaint in the Chancery Court for Henderson County against Vestal. The complaint sought damages in the amount of $127,205 for breach of contract, damage to business reputation, and failure to pay for services rendered. On February 3, 2011, Vestal filed an answer and counter-complaint. Vestal's counter-complaint asserted numerous claims, including: (1) breach of contract; (2) breach of the Contractors Licensing Act;[1] (3) negligence; (4) negligent misrepresentation; (5) negligence *per se*; (6) fraud or intentional misrepresentation; (7) intentional interference with business relationships; (8) intentional infliction of emotional distress; (9) violations of the Tennessee Consumer Protection Act;[2] and (10) breach of warranties.

On March 3, 2011, the McNatts filed their answer to the counter-complaint. On July 5, 2011, Vestal filed a motion for leave to file an amended counter-complaint. The trial court granted this motion, and, on July 27, 2011, Vestal filed an amended complaint. The amended complaint re-asserted all the claims set out in the original complaint, and also named Burton Construction and Michael Burton in his individual capacity as third-party defendants. On September 19, 2011, Burton Construction filed a motion to dismiss or, in the alternative, to transfer the matter to circuit court. Burton Construction's motion also asserted various defenses to Vestal's claims against it. Vestal filed a motion for partial summary judgment on February 1, 2012. The trial court heard the motion for partial summary judgment and the motion to dismiss or transfer on April 11, 2012. On April 25, 2012, the trial court denied both motions by separate orders.

---

[1] *See* Tenn. Code Ann. § 62-6-101 *et seq.*

[2] *See* Tennessee Code Annotated Section 47-18-101 *et seq.*

3

On November 26, 2012, Vestal and Henderson Villa, Inc. ("Henderson Villa") filed a joint motion to join Henderson Villa as an intervening plaintiff in the case, and the trial court granted the motion. The case was then delayed for some time due to discovery issues and continuances of the trial. On May 17, 2013, Burton Construction and Burton filed a motion for summary judgment. On May 31, 2013, Burton Construction and Burton made an offer of judgment to Vestal. On July 23, 2013, the trial court entered a consent order dismissing, with prejudice, all claims against Burton Construction and Michael Burton. On September 4, 2013, Vestal and Henderson Villa (together, "Appellants") filed a motion *in limine* seeking to sanction Appellees for not producing evidence and seeking to exclude Appellees from putting on any proof regarding construction costs. The trial court granted the motion on September 11, 2013.

Beginning on September 19, 2013, the trial court held a bench trial, wherein McNatt represented himself *pro se*. Mrs. McNatt did not appear during the trial, nor was she represented by counsel before the trial court. On January 16, 2015, the trial court entered an order either dismissing or denying all of Appellants' claims and awarding Appellees a judgment against Vestal in the amount of $96,280.11. On February 5, 2015, Appellants filed a motion to alter or amend the judgment, which the trial court denied in an order dated April 10, 2015. On April 29, 2015, Appellants filed the instant appeal, raising only limited issues.

## II. Issues

We restate the issues presented on appeal as follows:

1.  Whether the trial court erred in concluding that McNatt was a licensed contractor for purposes of the Contractors Licensing Act.
2.  Whether the trial court erred by awarding $96,280 to the Appellants.
3.  Whether the trial court erred in concluding that McNatt did not violate the Tennessee Consumer Protection Act.

## III. Standard of Review

This case was tried without a jury. Accordingly, we review the findings of fact made by the trial court *de novo*, with a presumption of correctness unless the preponderance of the evidence is to the contrary. Tenn. R. App. P. 13(d). The trial court's conclusions of law, however, are reviewed *de novo* and "are accorded no presumption of correctness." ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. 2008).

4

# IV. Analysis

## A. McNatt's Licensure Status

Under Tennessee Code Annotated Section 62-6-103(a), it is "unlawful for any person, firm or corporation to engage in, or offer to engage in, contracting…unless the person, firm or corporation has been duly licensed under this part." "Contracting" is defined as when "any person or entity"

> undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, schedule, direct or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down or furnishing labor to install material or equipment for any building…project development, housing, housing development, improvement or any other construction undertaking for which the total cost is twenty-five thousand dollars ($25,000) or more.

Tenn. Code Ann. § 62-6-102(3); *Id.* § 62-6-102(4)(a)(i). "Any contractor required to be licensed under this part who is in violation of this part…shall not be permitted to recover any damages in any court other than actual documented expenses that can be shown by clear and convincing proof." *Id.* § 62-6-103(b).

It is undisputed that McNatt did not possess a contractor's license at the time he entered into the contract with Vestal, nor did he obtain a contractor's license afterward. Appellants argue that because McNatt was unlicensed during the relevant time period, the trial court erred in determining that he did not violate the Contractors Licensing Act. Appellees, on the other hand, argue that McNatt's partnership with Burton Construction negated the requirement that he hold a license to perform contracting work pursuant to Tennessee Code Annotated Section 62-6-115.[3]

Our supreme court examined the issue of whether a contractor must be licensed at all times when performing contracting work in *Kyle v. Williams*, 98 S.W.3d 661 (Tenn. 2003). In *Kyle*, a contractor filed a complaint asserting that he had entered a contract with the defendants to construct a home and that the defendants had refused to pay the balance on the contract. *Id.* at 663. The defendants in *Kyle* answered that they had no liability under the

---

[3] Tennessee Code Annotated Section 62-6-115 states, in relevant part, that "Corporations and partnerships may engage in the business of contracting, provided that at least one (1) of the major stockholders or partners or full-time employees with a written power of attorney to bind the corporation has sufficient knowledge of the construction business in which the persons are licensed to perform."

contract because, *inter alia*, the contractor was unlicensed. *Id.* At the time the contractor in *Kyle* entered into the contract with the defendants, he held a valid contractor's license; however, his license expired while he was constructing the defendants' home. *Id.* Despite the expiration of his license, the contractor continued to perform contracting work. *Id.* In *Kyle*, our Supreme Court interpreted Tennessee Code Annotated Section 62-6-103(b) to mean "that a contractor is unlicensed for the purposes of Tennessee Code Annotated Section 62-6-103(b) if the contractor does not maintain a valid contractor's license *throughout the entire time* contracting services are performed under the contract." *Id.* at 666 (emphasis added). The *Kyle* court also noted that "'Contracting' is defined to encompass all stages and activities of a construction project. The statute expressly requires persons engaging in *any* of these activities to be licensed." *Id.* (emphasis in original).

The contract between McNatt and Vestal required payment in excess of $25,000. In Tennessee, a contractor is required to be licensed for any contracting work in which the total cost is $25,000 or more. Tenn. Code Ann. § 62-6-103(a)(1). Merely offering to construct the assisted living facility constitutes contracting work, and the duties that McNatt performed under the contract, set out *supra*, fall within the definition of contracting work as well. *See* Tenn. Code Ann. § 62-6-102(4)(A)(i). Here, McNatt was not licensed at the time he made his offer to Vestal or at any time during the construction project. Under the *Kyle* case, a contractor must be licensed "*throughout the entire time* contracting services are performed under the contract." *Id.* at 666 (emphasis added). Because McNatt was never licensed, we conclude that he acted as an unlicensed contractor.

We turn now to the issue of whether McNatt's joint venture agreement with Burton Construction negated the need for McNatt to hold a contractor's license. Tennessee Code Annotated Section 62-6-115 allows that entities engaged in a partnership may perform contracting work as long as one of the partners holds a contracting license. McNatt argues that the "Joint Venture Agreement" between Burton Construction and himself means that he was operating within a partnership wherein a partner held a contractor's license.

The holding in *Kyle* is instructive regarding this issue. The holding in *Kyle* requires persons engaged in contracting, which includes submitting a bid or offering to construct, as occurred here, to be licensed at all times. *Kyle*, 98 S.W.3d at 666. It is undisputed that McNatt and Burton Construction executed their agreement after McNatt executed his agreement with Vestal. Even if the agreement between McNatt and Burton Construction satisfies the requirements of Tennessee Code Annotated Section 62-6-115, McNatt was still unlicensed when he made his offer and executed the agreement with Vestal. *Kyle* requires that a contractor be licensed "throughout the entire time contracting services are performed under the contract." *Kyle*, 98 S.W.3d at 666. Because McNatt began performing contracting services before associating with Burton Construction, the subsequent association with Burton

6

Construction does not cure his unlicensed contracting activity.[4] We, therefore, conclude that the trial court erred in finding that McNatt did not violate the Contractors Licensing Act.

## B. Trial Court's Award

The trial court awarded Appellees $96,280.11 for breach of contract. We have concluded, however, that McNatt violated the Contractors Licensing Act. Therefore, as an unlicensed contractor, McNatt is only entitled to recover "actual documented expenses that can be shown by clear and convincing proof." *See* Tenn. Code Ann. § 62-6-103(b). "[C]ourts of Tennessee for many years held that an unlicensed contractor had no right to recover under [a] contract." **Kyle**, 98 S.W.3d at 665 (citing **Farmer v. Farmer**, 528 S.W.2d 539, 5421 (Tenn. 1975)). "Moreover, prior to the enactment of Section 62-6-103(b), unlicensed contractors had no right to recover based on *quantum meruit*—the reasonable value of the benefits received and retained." **Id.** "Therefore, the statutory provision allowing unlicensed contractors to recover only documented expenses proven by clear and convincing evidence is an *expansion* of the remedies previously available to unlicensed contractors in Tennessee." **Id.** (emphasis in original). At trial, Appellants did not challenge the formation of the contract or the amounts already paid to the Appellees. These issues have also not been raised on appeal. Therefore, in addressing the Appellants' issue of whether the trial court erred in awarding $96,280.11 to the Appellees, we confine our analysis to whether there is clear and convincing evidence to support the trial court's award.

The clear and convincing standard is "more exacting than the preponderance of the evidence standard, [but] it does not require such certainty as beyond a reasonable doubt standard." **O'Daniel v. Messier**, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995) (internal citations omitted) (*see also* **Hughes v. Bd. of Professional Responsibility of Supreme Court of Tennessee**, 259 S.W.3d 631, 642 (Tenn. 2008)). "Clear and convincing evidence eliminates any serious substantial doubt concerning the correctness of the conclusions to be drawn from the evidence." **Id.** (internal citations omitted). It should produce in the fact-finder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established." **Id.** (internal citations omitted).

At trial, Appellees presented an itemized list of costs totaling $91,996.06. These costs included architect fees, appraisal fees, interest paid on construction loans, application fees for

---

[4] Because we conclude that McNatt's offer to construct the assisted facility while unlicensed renders him in violation of the Contractors Licensing Act, we do not reach the issue of whether McNatt's association with Burton Construction would have satisfied the requirements of Tennessee Code Annotated Section 62-6-115.

licensure, charter fees, attorney's fees,[5] insurance costs, payments to engineers, the costs of blueprints, gasoline, and an administrative fee. Upon review of the record, we conclude that the majority of these costs are supported by clear and convincing evidence. However, we conclude that the awards for Marcia McNatt's administrative duties and the costs of gas are not supported by clear and convincing evidence.

Appellees assert that Vestal was supposed to pay Mrs. McNatt $7,000 for her service as Henderson Villa's administrator. McNatt testified that Vestal agreed to this price. The record contains a letter written by Vestal appointing Marcia McNatt as the administrator for Henderson Villa. This letter does not, however, specify an amount for which Mrs. McNatt is to be reimbursed for her service as administrator, nor is there any other evidence in the record regarding the value of these services or whether those serves were ever provided by Mrs. McNatt. Furthermore, Mrs. McNatt did not testify at trial. Thus, we conclude that McNatt's statement of the price, alone, does not rise to the level of clear and convincing evidence, and, therefore, the claim for this particular cost is not supported by the evidence.

McNatt also claims he incurred $12,044.03 in gasoline costs associated with the project. At trial, McNatt stated that he spent these funds traveling "to get this project financed, and get it approved, and get all [of] the development work done." He presented credit card statements as evidence of these gasoline costs. Most of the credit card statements merely show charges incurred at gas stations and convenience stores. The charges incurred at convenience stores and Wal-Mart, however, are not specific. There is no indication that the charges were solely for gasoline, and, as such, could include payment for any number of other items. We conclude that such evidence is not sufficient to meet the high evidentiary standard required to prove such costs in this case.

The credit card statements solely for gas charges also do not meet the clear and convincing standard required to award such costs. While McNatt testified that all the charges submitted were in furtherance of building Henderson Villa, McNatt did not specify in any detail the dates on which he drove to work on the Henderson Villa project. He also did not present mileage records documenting such trips to the project. There is also no evidence in the record to establish that each gasoline charge was solely for McNatt driving to develop Henderson Villa, as opposed to personal trips or other projects that McNatt had in the same area. For these reasons, we must conclude that the evidence of McNatt's gasoline costs do not meet the clear and convincing standard required to recover such costs.

Because we conclude that the evidence presented regarding the award for gasoline and Mrs. McNatt's administrative services does not meet the high evidentiary standard of clear

---

[5] The attorney's fee costs are related to closing costs for the project, not for the litigation of this case.

and convincing evidence, we conclude that the trial court erred in awarding those costs. In subtracting these costs from the total costs presented at trial, we conclude that there is clear and convincing evidence to support an award of only $72,952.03. Mrs. McNatt, of course, was not a party to the original contract, and, therefore, her only claim is for $7,000 for administrative duties. Because Mrs. McNatt's claim in this case is not supported by the evidence, the award in this case is solely to Mr. McNatt.

## C. Tennessee Consumer Protection Act

Finally, Appellants contend that the trial court erred in concluding that Appellees did not violate the Tennessee Consumer Protection Act ("TCPA"). Specifically, Appellants argue that McNatt's violation of the Contractors Licensing Act is a *per se* violation of the TCPA. *See* Tenn. Code Ann. 62-6-136(b). Appellees argue that the Appellants failed to prove any damages resulting from such a violation, and, thus, the trial court did not err in not awarding the Appellants a judgment for such a violation.

> Tennessee Code Annotated Section 62-6-136(b) states that a violation of [the Contractors Licensing Act] shall be construed to constitute an unfair or deceptive act or practice affecting the conduct of trade or commerce under the Tennessee Consumer Protection Act of 1977…and, as such, the private right of action remedy under the Tennessee Consumer Protection Act of 1977 shall be available to any person who suffers an ascertainable loss of money or property….

Because we conclude that McNatt operated as an unlicensed contractor and, thereby, violated the Contractors Licensing Act, we must also conclude that McNatt engaged in a practice declared unlawful for purposes of the TCPA.

> In order to bring a claim under the TCPA, the plaintiff must prove: (1) that the defendant…engaged in an unfair or deceptive act or practice declared unlawful…and (2) that the defendant's conduct caused an 'ascertainable loss of money, or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated….

*Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. 2005). Although we have concluded that McNatt engaged in a practice declared unlawful for purposes of the TCPA, we must also review whether Appellants sustained an "ascertainable loss" as a result of McNatt's conduct. Whether there is evidence to support a finding of damages is a question of fact. *See BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 230-31 (Tenn. Ct. App. 2006).

In its order, the trial court dismissed the Appellants' TCPA claim because "Vestal is unable to prove that she suffered an ascertainable loss of any money or property." In their complaint and at trial, Appellants asserted that the construction of the assisted living facility was defective. The trial court found that "any defects are already fixed or are not called for by the plans and do not actually constitute defects." In its order, the trial court also stated that "Vestal and McNatt entered into a contract for the development of an assisted living facility and for the facility to be properly licensed and sanctioned by the State of Tennessee under its rules and regulations. Vestal received that pursuant to the contract and accepted the building and facility." Although Appellants dispute these findings on appeal, we have reviewed the record and cannot conclude that the evidence preponderates against the findings of the trial court on the issue of ascertainable loss. Accordingly, we affirm the trial court's dismissal of Appellants' TCPA claim for a lack of evidence establishing damages.

## Conclusion

For the foregoing reasons, we reverse the trial court's finding that McNatt did not violate the Contractors Licensing Act and reduce the trial court's award to $72,952.03. Because Mrs. McNatt's only claim is not supported by clear and convincing evidence, the judgment is awarded to Mr. McNatt only. We affirm the trial court's judgment in all other respects. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are taxed to the Appellants, Jane Vestal and Henderson Villa, Inc., and their surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE